## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LANNETT COMPANY, INC., and
ARTHUR BEDROSIAN,

              Plaintiffs,

      v.

RICHARD E. ASHERMAN,

              Defendant.

Civil Action No. _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs, Lannett Company, Inc. ("Lannett") and Arthur Bedrosian ("Bedrosian")

(collectively, "Plaintiffs"), bring this action for breach of contract, breach of fiduciary duties,

breach of the duty of good faith and fair dealing, invasion of privacy and for declaratory relief

and damages against defendant Richard E. Asherman ("Asherman" or "Defendant") and, in

support thereof, allege the following:

## THE PARTIES

1.      Plaintiff, Lannett, is a Delaware corporation with its principal place of business

located at 9000 State Road, Philadelphia, Pennsylvania 19136.

2.      Plaintiff, Bedrosian, is a citizen of the Commonwealth of Pennsylvania.

3.      Defendant, Asherman, is a citizen of the State of Wyoming residing at 102 North

Chugwater Drive, Wyoming 82414.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332(a) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $150,000, exclusive of interest and costs. In addition, the Court has jurisdiction over Count V pursuant to 28 U.S.C. § 2201 as there is an actual, justicable controversy arising under this Count.

5.      This Court may exercise personal jurisdiction over Defendant because he regularly conducts business in the Commonwealth of Pennsylvania, is otherwise found and present there, and has caused harm and tortious injury within the Commonwealth.

6.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### The Relationship Among The Parties

7.      Lannett develops, manufactures and distributes generic prescription pharmaceutical products in tablet, capsule and oral liquid forms to customers throughout the United States. It markets its products primarily to drug wholesalers, retail drug chains, distributors and mail order pharmacies.

8.      Lannett is the sole owner of Cody Laboratories, Inc. ("Cody Laboratories"), a non-party Wyoming corporation that is in the business of manufacturing component parts of generic drugs for use in generic versions of innovator brands. Lannett relies upon the business and operations of Cody Laboratories as its supplier.

9.      Bedrosian is the President and Chief Executive Officer ("CEO") of plaintiff, Lannett and Chairman of the Board of Cody Laboratories.

10.     Defendant, Asherman is the Chief Executive Officer ("CEO") of Cody Laboratories.

2

11.   Cody LCI Realty, LLC ("Cody LCI Realty") is a non-party Wyoming limited liability company. Plaintiff, Lannett, and Defendant, Asherman are its sole members. Cody LCI Realty owns certain property and improvements located in Cody, Wyoming pursuant to a Special Warranty Deed dated July 10, 2006. The property remains subject to a mortgage and promissory note.

12.   Pursuant to a lease agreement, Cody Laboratories occupies the property owned by Cody LCI Realty, from which it conducts the business upon which Lannett relies, such that harm to Cody Laboratories results in harm to Lannett.

13.   The relationship among the described entities may be portrayed graphically as:



14.   There are a series of agreements dated in or about July 2006 between and among the depicted parties reflecting and governing their relationships. These include, without limitation, the Limited Liability Company Operating Agreement of Cody LCI Realty, LLC ("Operating Agreement"), a Lease Agreement between Cody Laboratories and Cody LCI Realty

("Lease Agreement"), and a mortgage, note and related documents securing the property owned by Cody LCI Realty (collectively, "Mortgage").

15.    In or about December 2012, Cody LCI Realty, Cody Laboratories, the City of Cody and non-party Forward Cody Wyoming, Inc. entered into a Project Development and Administration Agreement ("Project Development Agreement") at the suggestion of Asherman, pursuant to which Cody LCI Realty agreed to convey a portion of the its property to Forward Cody Wyoming, Inc. ("Forward Cody ") and Forward Cody would use grant money from the State of Wyoming to construct a building for Cody LCI Realty.  In addition, Cody LCI Realty and Forward Cody then entered into an agreement by which Cody LCI Realty leased that property back from Forward Cody.

**The Agreements**

     **A.**    **The Operating Agreement**

16.    On or about July 3, 2006, Lannett and Asherman entered into the Operating Agreement, which governs their membership in Cody LCI Realty. See Operating Agreement, attached hereto as Exhibit "A".  Pursuant to the Operating Agreement both Lannett and Asherman are "Members" of Cody Realty LCI , see id. at §§ 1.10, 1.14, but only Lannett is the "Manager" or managing member of Cody LCI Realty.  See id. at § 1.25.

17.    Lannett's duties and responsibilities as Manager are specified in Section 5 of the Operating Agreement and include the control of the business transactions and decisions of the company, and the duty to exercise sound business judgment.  See Operating Agreement, at § 5.1(d).

18.    The Operating Agreement further provides, in pertinent part, that Cody LCI Realty may be dissolved upon the occurrence of certain "Events of Dissolution", including "the

4

unanimous written consent of the Members (other than Defaulting Members) to terminate and dissolve the Company." See Operating Agreement, §11.1.

19.     The Operating Agreement defines a "Defaulting Member" as a member that, after failing to perform or breaching its obligations under the Operating Agreement or breaching any of the terms of the Operating Agreement, fails to cure such default within thirty days of receiving notice of the default. See Operating Agreement, §11.4.

**B.     The Lease Agreement**

20.     Nearly contemporaneously with the execution of the Operating Agreement, on July 7, 2006, Cody LCI Realty and Cody Laboratories entered into the Lease Agreement, by which Cody Laboratories leased from Cody LCI Realty certain property located in Cody, Wyoming. See Lease Agreement, attached hereto as Exhibit "B".

21.     Section 4.1 of the Lease Agreement provides the annual and monthly fixed rent that Cody Laboratories is to pay Cody LCI Realty. See Lease Agreement, § 4.1.

22.     The Lease Addendum, dated July 8, 2008, increased the annual and monthly fixed rent to $240,000 per year ($20,000.00 per month). See Lease Agreement, Addendum.

**C.     The Mortgage**

23.     The property leased by Cody Laboratories from Cody LCI Realty is subject to the Mortgage and Promissory Note. See Mortgage, attached hereto as Exhibit "C"; see also Promissory Note, attached hereto as Exhibit "D".

24.     Cody LCI Realty and Asherman are identified as the Borrowers on the Mortgage See Mortgage, at p. 5.

5

25.    The Mortgage provides, in part, that dissolution of Cody LCI Realty is a Default

Event, which allows the lender to exercise certain remedies including, but not limited to,

foreclosure on the property. See Mortgage, at pp. 4-5.

## The Relationship Among The Parties Deteriorates

26.    For over six years, Lannett and Asherman successfully operated Cody LCI Realty

pursuant to the Operating Agreement.

27.    Commencing in or about August 2012 and continuing to this day, in a sharp break

from prior practice, Asherman began to make a series of false, pretextual claims respecting

Lannett and Bedrosian, claiming – without proper legal or factual basis – that the parties' lengthy

relationship was somehow burdened by a previously unidentified conflict of interest.

28.    Seeking to profit personally and at the expense of Lannett, Asherman identified

certain "concerns" he had relating to the Lease Agreement and wrongly claimed that these

"concerns" constituted a default by Lannett, as Manager, under the Operating Agreement.

29.    Asherman continued to raise similar pretextual claims against Lannett and

Bedrosian while conflating Lannett's role of the "Manager" of Cody LCI Realty with its separate

role as a "member" of the company, and simultaneously ignoring his own duties and

responsibilities as CEO of Cody Laboratories.

### A.    Asherman Demands Compensation In Connection With The Project Development Agreement

30.    With respect to the Project Development Agreement,  Asherman demanded to be

compensated for an alleged reduction in the value of his interest in Cody LCI Realty as a result

of the conveyance of its property to Forward Cody.

31.    In the alternative, Asherman demanded that Lannett liquidate a portion of

Asherman's interest in Cody LCI Realty for fifty percent of the appraised value of the property.

6

32.     Lannett, as Manager of Cody LCI Realty, did not agree to these demands because,

pursuant to the Operating Agreement, Asherman was not entitled to the demanded compensation.

**B.     Asherman Claims A "Potential Conflict of Interest"**

33.     In or about August 2012, Asherman asserted for the first time that his position as

CEO of Cody Laboratories and his personal membership in Cody LCI Realty created a potential

conflict of interest.

34.     At that time, Asherman alleged that he could not fulfill his fiduciary duties as an

officer of Cody Laboratories with respect to its involvement with the Lease Agreement with

Cody LCI Realty, because he had a financial interest in Cody LCI Realty.

35.     To remedy this alleged potential conflict of interest, Asherman – in an effort to

secure payments to which he was not entitled – demanded that Lannett pay him the pro rata

value of his interest in Cody LCI Realty, thereby eliminating Asherman as a member of Cody

LCI Realty.

36.     Although Lannett did not agree that any such potential conflict of interest existed,

it initially agreed to consider Asherman's demand conditioned on an appraisal of Cody LCI

Realty and Lannett's approval of the appraised value of the company.

37.     Ultimately, Lannett refused Asherman's demand that his interest in Cody LCI

Realty be purchased by Lannett because, inter alia, Asherman continued to make ever-changing

pretextual demands on, and claims against, Lannett.

**C.     Asherman Seeks To "Prove" Plaintiffs' Alleged Wrongdoing By Engaging in
         a Campaign Of Wrongful Conduct, Including The Illegal And Unauthorized
         Recording Of One Or More Telephone Conversations**

38.     Commencing on some unknown date, but believed to be on or before September

2012, Asherman began a clandestine campaign to "prove" that Plaintiffs had somehow acted

7

improperly, even though they did not. The aim of this plan was to force Lannett to purchase Asherman's interest in Cody LCI Realty and to provide him with other payments to which he was not entitled.

39.     As part of this plan, Asherman, upon information and belief, secretly recorded one or more telephone conversations in which he participated and did so without notice to, or consent of, the other participants.

40.     Specifically, upon information and belief, Asherman tape recorded one or more meetings of the members of the Board of Directors of Cody Laboratories without consent.

41.     Bedrosian, as Chairman of the Board of Directors, participated in these meetings telephonically from Pennsylvania.

42.     Asherman was located in Wyoming at the time he surreptitiously tape recorded the telephonic Cody Laboratories Board meetings.

43.     Asherman did not disclose to the Board that he was recording the meetings and no one on the Board, including Bedrosian, consented to the recording.

## D.     Asherman Raises Pretextual "Concerns" And Falsely Accuses Lannett Of Defaulting Under the Operating Agreement

44.     On January 4, 2013, Asherman delivered a letter to Lannett advising of certain "concerns" he had and purporting to provide Lannett notice under Section 11.4 of the Operating Agreement. See January 4, 2013 Letter, attached hereto as Exhibit "E".

45.     Suggesting that Lannett was in default of the Operating Agreement, Asherman, for the first time, requested that Bedrosian, on behalf of Lannett:

> (a)     Examine Cody LCI Realty's insurance coverage and obligations with respect to the Lease Agreement because Asherman believed that Cody LCI Realty was "significantly under-insured";

8

        (b)     Investigate and secure a performance bond on behalf of Cody Laboratories for alterations, improvements and additions costing in excess of $50,000.000, as required by the Lease Agreement; and

        (c)     Engage "meaningful discussions" between Cody LCI Realty and Cody Laboratories about a reasonable rent adjustment.

46.     In response, Bedrosian, on behalf of Lannett, sent Asherman a letter denying that any of the issues raised in Asherman's January 4, 2013 letter constituted a default of the Operating Agreement. See January 25, 2013 Letter, attached hereto as Exhibit "F".

47.     Bedrosian further: (a) authorized Asherman to obtain an opinion from an insurance broker and advised that, should the opinion recommend additional coverage, Lannett, as Manager of Cody LCI Realty, would take it under advisement; (b) reminded Asherman that, as the CEO of Cody Laboratories, Asherman is obligated to secure the performance bond as required by the terms of the Lease; and (c) explained that Lannett did not agree that a rent adjustment was necessary.

48.     On January 29, 2013, Asherman sent Bedrosian a response indicating that Asherman believed that Lannett continued to be in default and was under an obligation to cure the alleged defaults according to Section 11.4 of the Operating Agreement. See January 29, 2013 Letter, attached hereto as Exhibit "G".

49.     Asherman further advised that he would comply with Lannett's directives to obtain an opinion from the insurance carrier and seek a performance bond; however, by doing so he claimed he was positioned for a potential conflict of interest between his personal membership in Cody LCI Realty and position as CEO of Cody Laboratories.

50.     In addition, Asherman again demanded that the Lease Agreement be amended to increase the monthly rent paid by Cody Laboratories to Cody LCI Realty.

**E.**     **Asherman Threatens To File A Lawsuit**

51.     On or about February 7, 2013, Asherman, through his attorney, delivered a letter

to Lannett asserting a litany of bogus, unsubstantiated demands and claims against Lannett,

Bedrosian, Cody Laboratories and Cody LCI Realty including, but not limited to:

     a. Breach of fiduciary duty by Lannett arising out of alleged self-dealing;

     b. Breach of contract for Lannett's failure to honor an alleged agreement to purchase Asherman's interest in Cody LCI Realty;

     c. Breach of contract for Lannett's failure to require Cody Laboratories to pay certain insurance premiums and provide a performance bond;

     d. Breach of the covenant of good faith and fair dealing by Lannett;

     e. A demand for dissolution of Cody LCI Realty;

     f. A demand for an injunction preventing Cody Laboratories from further occupying the leasehold property until insurance and a performance bond are in place;

     g. A demand for the revision of the rent provisions of the Lease Agreement;

     h. Breach of the Operating Agreement by Lannett.

See February 7, 2013 Letter, attached hereto as Exhibit "H".

52.     In his letter, Asherman threatened to file suit against Lannett, Bedrosian and/or

Cody Laboratories unless: (a) Asherman was released from his employment agreement with

Cody Laboratories and paid full severance benefits; and (b) Lannett immediately agreed to buy

out Asherman's interest in Cody LCI Realty.

**F.**     **Asherman Purports To Unilaterally Dissolve Cody LCI Realty**

53.     After additional correspondence, on March 1, 2013, Asherman wrote to Lannett

advising that he, as the purported "De Facto Managing Member" and only "non-defaulting

member" of Cody LCI Realty, had supposedly dissolved Cody LCI Realty by unilateral action

and/or would shortly do so. See March 1, 2013 Letter, attached hereto as Exhibit "I".

10

54.     There is no basis in law or in fact for the alleged dissolution of Cody LCI Realty,

such that the claimed dissolution of the company is void and without effect. Lannett and

Bedrosian, through correspondence of counsel, told this to Asherman.

55.     Nonetheless, on or about March 12, 2013, Asherman wrongfully, and without

legal basis, again threatened to file Articles of Dissolution for Cody LCI Realty. See March 12,

2013 email, attached hereto as Exhibit "J".

56.     The claimed dissolution of Cody LCI Realty is improper and will cause Lannett

harm because it is the sole owner of Cody Laboratories, which manufactures chemicals for

Lannett, and operates its business on property owned by Cody LCI Realty.

57.     The alleged dissolution of Cody LCI Realty is a Default Event under the

Mortgage that, if effective, could either lead to foreclosure of the property, which is leased by

Cody Laboratories, or cause the property to suffer other consequences.

58.     The claimed dissolution of Cody LCI Realty threatens to disrupt the business and

operations of Cody Laboratories, and of its owner, Plaintiff, Lannett.

## G.     Asherman Threatens To Injure Lannett by Interrupting, Interfering and Halting The Operations of Lannett's Supplier, Cody Laboratories

59.     On or about March 14, 2013, Asherman again threatened, without cause or basis,

to harm Lannett, by interrupting, interfering and halting the operations of Cody Laboratories. See

March 14, 2013 Letter, attached hereto as Exhibit "K". Specifically, Asherman threatened to

shutter Cody Laboratories' business by "suspending all chemical (API) operations" and

"suspending all work on capital and/or other construction projects greater than $50,000."

60.     Through the threatened closure of the business of Lannett's wholly owned

subsidiary and supplier, Cody Laboratories, Asherman intends to cause, and will cause, harm to

Lannett.

11

61. On March 15, 2013, at Asherman's insistence, the Board of Cody Laboratories hastily convened to address Asherman's threat to cease the operations of the company, and stop vital construction projects.

62. At the meeting, Asherman retreated from his prior position and withdrew his threats against Cody Laboratories.

63. On March 20, 2013, the Board served Asherman, in his capacity as CEO of Cody Laboratories, with a formal reprimand. See Reprimand Letter, attached hereto as Exhibit "L".

64. The reprimand addressed Asherman's antagonistic relationship with the Board, Asherman's threat to shutter operations of Cody Laboratories, performance bonds, insurance and other matters.

65. Asherman sent a letter in response to the reprimand in which he asserted that he had been prevented from performing his duties as CEO by Lannett and the Board of Cody Laboratories. See Response dated March 27, 2013, attached hereto as Exhibit "M".

## COUNT I
## BREACH OF CONTRACT
### (Lannett against Defendant)

66. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

67. The Operating Agreement is a valid and binding contract.

68. Lannett performed all of its obligations under the Operating Agreement.

69. Asherman breached the Operating Agreement by, inter alia, demanding that Cody LCI Realty compensate Asherman for the company's conveyance of property to Forward Cody, demanding that Lannett buy out his membership interest in Cody LCI Realty, and unilaterally attempting to cause the dissolution of Cody LCI Realty.

12

70.     As a direct and proximate result of the Asherman's breach of the Operating

Agreement, Lannett has been damaged.

WHEREFORE, plaintiff Lannett Company, Inc. demands that judgment be entered in its

favor and against defendant Richard E. Asherman in an amount to be determined by the jury

along with interest, costs, and for specific performance of the contract along with such other and

further relief as the Court deems just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (Lannett against Defendant)

71.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 65 of the Complaint as if fully set forth herein.

72.     As a member of Cody LLC Realty, Asherman owes Cody LLC Realty and

Lannett the fiduciary duties of loyalty and care.

73.     Asherman breached his fiduciary duties by, inter alia, demanding that Cody LCI

Realty compensate Asherman for the company's conveyance of property to Forward Cody for

his own personal enrichment; demanding that Lannett buy out his membership interest in Cody

LCI Realty for his own personal enrichment; and unilaterally attempting to cause and/or

threatening to cause the dissolution of Cody LCI Realty.

74.     As a direct and proximate result of the Asherman's breach of his fiduciary duties,

Lannett has been damaged.

75.     The foregoing conduct by Asherman was intentional, willful and malicious,

entitling Lannett to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff Lannett Company, Inc. demands that judgment be entered in its

favor and against defendant Richard E. Asherman for both compensatory and punitive damages

13

to be determined by the jury along with interest, costs, along with such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Lannett against Defendant)

76. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 of the Complaint as if fully set forth herein.

77. The Operating Agreement contains implied covenants of good faith and fair dealing.

78. By reason of the foregoing, Asherman has breached the implied covenants of good faith and fair dealing contained within the Operating Agreement.

79. As a direct approximate result of Asherman's breach of the duties good faith and fair dealing, Lannett has suffered, and continues to suffer damages.

WHEREFORE, plaintiff Lannett Company, Inc. demands that judgment be entered in its favor and against defendant Richard E. Asherman in an amount to be determined by the jury along with interest, costs, along with such other and further relief as the Court deems just and proper.

## COUNT IV
## INVASION OF PRIVACY
### (Bedrosian against Defendant)

80. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 74 of the Complaint as if fully set forth herein.

81. The Pennsylvania Legislature has deemed it the public policy of the Commonwealth of Pennsylvania to prohibit unilateral recordings of parties and conversations

14

without prior consent of all participants to the conversation and has even created criminal sanctions for those who violate this policy. <u>See</u> 18 Pa. C.S.A. § 5703.

82.    In or about August 2012, the Directors of Cody Laboratories held a telephonic Board meeting.

83.    Bedrosian participated telephonically in the meeting from Pennsylvania.

84.    Asherman participated telephonically in the meeting from Wyoming.

85.    Bedrosian engaged in oral communications at this meeting.

86.    Bedrosian had the expectation that his oral communications would not be recorded.

87.    Due to the potentially proprietary and confidential nature of the business decisions held at board meetings, Bedrosian's expectation of privacy was entirely justified.

88.    Nevertheless, Asherman recorded the oral communications at the meeting.

89.    Asherman did not disclose to Bedrosian or anyone else in attendance that he was recording the meeting.

90.    The foregoing conduct by Asherman was intentional, willful and malicious, entitling Bedrosian to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff Bedrosian demands that judgment be entered in its favor and against defendant Richard E. Asherman for an amount of compensatory and punitive damages to be determined by the jury along with interest, costs, along with such other and further relief as the Court deems just and proper.

15

**COUNT V**
**DECLARATORY JUDGMENT**
**(Plaintiffs against Defendant)**

91.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 85 of the Complaint as if fully set forth herein.

92.     There is an actual justiciable controversy between Asherman and Plaintiffs with

respect to the Operating Agreement.

93.     Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil

Procedure, Plaintiffs request a declaratory judgment that:

  a.  Lannett did not breach its fiduciary duties or engage in self-dealing as alleged by
      Asherman;

  b.  Lannett did not default under the Operating Agreement;

  c.  Lannett did not breach the Operating Agreement;

  d.  Lannett did not breach the covenant of good faith and fair dealing contained in the
      Operating Agreement;

  e.  Bedrosian did not engage in self-dealing or breach his fiduciary duties as the CEO
      of Lannett;

  f.  Lannett did not cause Cody LCI Realty to default under the Lease Agreement;

  g.  Lannett did not cause Cody LCI Realty to breach the Lease Agreement;

  h.  Lannett did not breach an agreement to purchase Asherman's membership interest
      in Cody LCI Realty;

  i.  Asherman improperly purported to dissolve Cody LCI Realty in violation of the
      Operating Agreement;

16

j.   Lannett's conduct did not cause Cody LCI Realty to enter into the Lease Agreement in a less than arm's length transaction; and

k.   There is no legal basis to interrupt, interfere or halt the business and/or operations of Lannett's wholly owned subsidiary and supplier, Cody Laboratories.

WHEREFORE, plaintiffs Lannett Company, Inc. and Arthur Bedrosian pray for judgment in their favor and against defendant Richard E. Asherman and for Declaratory Relief as set forth above and for such further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues properly triable by a jury in this action.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs Lannett Company, Inc. and Arthur Bedrosian pray for judgment in their favor and against defendant Richard E. Asherman on all Counts of the Complaint, for compensatory damages under Counts I-IV, punitive damages on Counts II and IV, Declaratory Relief as set forth in Count V, and for such further relief as the Court deems just and proper.

FOX ROTHSCHILD LLP

George J. Krueger, Esquire (I.D. No. 30501)
Samuel H. Israel, Esquire (I.D. No. 55776)
Maura L. Burke, Esquire (I.D. No. 308222)
2000 Market Street, 20th Floor
Philadelphia, PA  19103
(215) 299-2000

Dated: April 15, 2013