# EXHIBIT "M"

Gentlemen,

Please accept this response to your March 20, 2013 Letter of Reprimand. I will respond in to each of the issues in the order presented in your letter.

The second paragraph of your letter refers to "full time efforts to the proper and faithful performance of all duties customarily discharged by a CEO", and "best efforts to comply with all fiduciary and performance standards". I have in the past and will continue to perform those duties as described in my Employment Agreement to the best of my abilities. As I will describe in this letter, I believe that I have been prevented from doing this by the Lannett management and the Cody Board itself.

**Paragraph #1** of the letter states that I have been antagonistic because I have failed to comply with the directives to secure quotes for insurance, and to make sure that the contractors have performance bonds. Those directives were given to me in the January 25, 2013 letter from Arthur. I will first respond to the issue surrounding the performance bonds. Since February, quotes for new capital projects exceeding $50,000 include performance bonds from the contractors. We have not started construction on a new one since that directive was given. Copies of three separate quotes are attached (Cody Labs Room 21, Nitrogen pad estimate, Cody Labs QC Lab). As you can see, all of those quotes include the performance bonds as communicated to the contractors back in February. I have complied completely and timely with that directive.

The second issue in paragraph #1 of the letter of reprimand pertains to getting quotes for insurance. Months prior to Arthurs January 25th letter, I started enquiring with Mike Landis about the insurance coverage. Though I sent numerous requests about the levels of coverage, I only received information once which was sent to Dennis Hanks. That information was received by me on January 30, 2013. It showed the coverage of $12 million as shown in my letter to you requesting the special board meeting. On January 4th of this year I sent a letter to Arthur letting him know about the insufficient level of insurance. My effort was to try to go through Lannett's existing carrier for quotes on increasing coverage. Currently Cody Labs is covered as premises #4 on the Lannett policy. I made every attempt to receive a copy of Lannett's policy without a response or success as recently as my March 20th email to the Cody Board. On March 6, of 2013 I contacted Lannett's insurance broker, Sandra Tucker of Marsh Insurance to discuss receiving quotes and an assessment of our current levels of insurance coverage. On March 7, she responded to me that Lannett will handle any issues pertaining to the property insurance, and that Lannett will contact me accordingly. A copy of the email is attached.

I did not think that after the correspondence about insurance, and the directive from Arthur to me to obtain the insurance quotes that I would be prevented by the very management that gave me the directive. Since that time I have met with two different companies locally in order to comply with Arthur's directive. One is putting a package together and the second has sent me an application. On March 19, I notified Bill Schreck that I received an insurance application and again requested a copy of Lannett's completed application to use as a guide to make sure I was requesting a similar policy for review. I still have not received a copy of Lannett's complete policy, nor have I received a copy of

Lannett's completed application. For clarification, I would like to know if I should be filling out that application that was forwarded to Bill. My current plan is to fill it out. Please let me know.

I have complied with Arthur's direction regarding the performance bonds, and have made every reasonable effort to comply with the request to receive quotes for the insurance. I do not agree with your assertion that I have not complied with those two directives.

**Paragraph #2**. First let me say that I regret the tone of the letter I sent to the Cody Board. Although I believed at the time, and still believe that the situation is urgent, I could have used a different tone while still conveying a sense of urgency. For that I extend my apologies to the Board.

I disagree with the assertion that I would make unilateral decisions, or that those actions would have constituted irresponsible behavior. My letter stated that I would not stop chemical operations if the Board disagreed with my proposed course of action. I then requested a Special Board meeting so these issues could be discussed and voted on. Those actions do not reflect someone acting unilaterally.

The question raised to the Board was whether or not we were protecting the assets of the company given the insufficient level of current insurance, and whether or not we should continue with chemical operations based on those facts. I did not then retreat, or withdraw my belief, that we should discontinue chemical operations. Barry asked a hypothetical question. He asked if on the following Monday the insurance levels had been increased to $25 million, whether that would correct the situation. I stated that if that amount was adequate, then the situation about the required level of insurance would be remediated. I never withdrew my assertion that we should stop chemical operations. Towards the end of the meeting prior to the executive session, I requested that the Board communicate their answer to me. Brad Rodos said that I would receive a response from the Board on the following Monday. To this day, I still have not received the results of a vote, further communication from the Board, or minutes from the meeting.

In a letter to Arthur dated January 29, 2013 I stated that Cody Laboratories was in default of the Lease Agreement with Cody LCI Realty. The situation still remains urgent. There is not adequate insurance to protect the assets of the company. I, again request, a copy of the complete insurance policy from Lannett and also a copy of the application Lannett last submitted so I can fill one out that matches as closely as possible to the current policy.

**Paragraph #3**. The situation of the recent environmental health and safety report performed by Affygility brings to light a number of issues that we are currently dealing with. Your letter states that the company allowed significant health and safety risks. The actual situation that occurred was that we had two employees test positive on their urinalysis. We believed this to be an occupational exposure. Immediately we contacted Affygility to come in and perform an industrial hygiene inspection. They concluded that the gloves that were worn by the operators for a cleaning operation had been permeated by one of the solvents used for cleaning. This situation had not been seen in the six years we have been manufacturing the solutions. That problem was immediately corrected. The inspection also raised several other concerns. Cody Laboratories immediately informed the board and discussed contacting Holland & Hart Law Firm. They have specialties in this area. They performed an onsite

assessment and determined that we should file a Toxic Report Inventory and register as a large hazmat waste producer. We reacted timely, professionally and responsibly to all of these issues. I am not only willing and able, but proactive in doing everything we can do as a company to maintain compliance and provide a safe work place for our employees.

**Paragraph #4**. Recording meetings has never been previously discussed by the Cody Board. It is not in violation of any Federal or State laws. I will not however, record Cody Board meetings going forward.

**Paragraph #5**. As stated in my email from Monday, this is a subject pertaining to my interests as a partner in Cody LCI Realty, not as CEO of Cody Labs. My letter concerning the dissolution was addressed to another member of Cody LCI Realty and not to the Cody Board. To avoid continued conflicts of interest between my ownership interests in Cody LCI Realty, and my duties as CEO of Cody Labs, we must keep these issues and conflicts separate.

I believe I am in full compliance with my Employment Agreement.

Thank you in advance for taking the time to review and consider my response.

Sincerely,

Richard Asherman