IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LANNETT COMPANY, INC. and | : | CIVIL ACTION |
| ARTHUR BEDROSIAN | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD ASHERMAN | : | NO. 13-2006 |

## MEMORANDUM

**Padova, J.**                                                                      **February 24, 2014**

Plaintiffs Lannett Company, Inc. ("Lannett") and Arthur Bedrosian, the President and Chief Executive Officer ("CEO") of Lannett, brought this action against Defendant Richard E. Asherman arising out of a corporate business relationship among the parties. Presently before the Court is Asherman's Motion to Dismiss, which seeks dismissal of the entire case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3); transfer of the case to the District of Wyoming pursuant to 28 U.S.C. § 1404(a); dismissal of Count Four for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6); and/or dismissal of Count Five as an improper anticipatory filing pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. For the following reasons, we deny the Motion insofar as it seeks to dismiss the case for improper venue, grant the Motion insofar as it seeks to transfer the case pursuant to 28 U.S.C. § 1404(a), and hold the Motion in abeyance, in all other respects, until this action is transferred to the United States District Court for the District of Wyoming.

## I.      BACKGROUND

The Complaint alleges the following facts. Plaintiff Arthur Bedrosian, a Pennsylvania resident, is the President and CEO of Lannett. (Compl. ¶ 9.) Lannett, which is incorporated in Delaware and has its principal place of business in Philadelphia, Pennsylvania, develops,

manufactures, and distributes generic pharmaceutical products throughout the United States.  (Id. ¶¶ 1, 7.)  Lannett is also the sole owner of subsidiary Cody Laboratories, Inc. ("Cody Labs"), a Wyoming corporation that manufactures component parts of generic drugs, and which acts as a supplier to Lannett.  (Id. ¶ 8.)  Bedrosian is also the Chairman of the Board of Cody Labs.  (Id. ¶ 9.)  Asherman is the CEO of Cody Labs.  (Id. ¶ 10.)

Cody Labs occupies a property owned by Cody LCI Realty, LLC ("Cody LCI"), a Wyoming limited liability company.  (Id. ¶¶ 11-12.)  Lannett is the manager and a 50% member of Cody LCI.  (Id. ¶¶ 11, 13.)  Asherman is also a 50% member of Cody LCI.  (Id. ¶¶ 11, 13.)  Cody LCI is governed by a Limited Liability Company Operating Agreement (the "Operating Agreement"), which is signed by Lannett and Asherman.  (Id. ¶¶ 14, 16.)  The Operating Agreement states that Lannett's duty as Manager of Cody LCI is to control the business transactions and decisions of the company and to exercise sound business judgment.  (Id. ¶ 17.)  It also provides that Cody LCI may be dissolved upon certain "Events of Dissolution," including the unanimous written consent of all members, except for defaulting members.  (Id. ¶ 18.)  A "defaulting member" is defined as any member that, after failing to perform or breaching its obligations under the Operating Agreement or breaching any terms of the Operating Agreement, fails to cure such default within 30 days of receiving notice of default.  (Id. ¶ 19.)

In December 2012, Cody LCI, Cody Labs, the City of Cody, and a third company named Forward Cody Wyoming, Inc. ("Forward Cody"), entered into a Project Development and Administrative Agreement by which Cody LCI agreed to convey a part of its property to Forward Cody, and that company would use grant money from the State of Wyoming to construct a building for Cody LCI.  (Id. ¶ 15.)  Cody LCI and Forward Cody then entered into an agreement by which Cody LCI leased that property back from Forward Cody.  (Id.)

Asherman demanded to be compensated for the alleged reduction in value of his interest in Cody LCI as a result of its conveyance of property to Forward Cody, or in the alternative, he demanded that Lannett liquidate a portion of Asherman's interest in Cody LCI for fifty percent of the appraised value of the property.  (Id. ¶¶ 30-31.)  Lannett refused both of Asherman's demands.  (Id. ¶ 32.)

In August 2012, Asherman asserted that his position as CEO of Cody Labs and his personal membership in Cody LCI created a conflict of interest.  (Id. ¶ 33.)  At that time, Asherman felt that he could not fulfill his fiduciary duties as an officer of Cody Labs because he had a financial interest in Cody LCI.  (Id. ¶ 34.)  To remedy this conflict of interest, Asherman demanded that Lannett pay him the pro rata value of his interest in Cody LCI, and Lannett agreed to consider his demand conditioned on Lannett's approval of the appraised value of the company.  (Id. ¶¶ 35-36.)  Ultimately, Lannett refused Asherman's demand because Asherman continued to make ever-changing pretextual demands on Lannett.  (Id. ¶ 37.)

In September 2012, Asherman secretly tape recorded a telephone conversation of the Board of Directors of Cody Labs without consent.  (Id. ¶¶ 39-40.)  Bedrosian participated in this meeting telephonically from Pennsylvania.  (Id. ¶ 41.)  Asherman participated in this meeting telephonically from Wyoming.  (Id. ¶¶ 42, 84.)

On January 4, 2013, Asherman delivered a letter to Lannett advising Lannett that it was in default of the Operating Agreement, and requested that Bedrosian cure those alleged defaults by increasing Cody LCI's insurance coverage, securing a performance bond on behalf of Cody Labs, and adjusting the rent payments between Cody LCI and Cody Labs.  (Id. ¶ 45.)  Bedrosian sent Asherman a letter on January 25, 2013, denying that it was in default on those grounds.  (Id.

¶ 46.)  On January 29, 2013, Asherman sent Bedrosian a response indicating that he believed that Lannett continued to be in default and was obligated to attempt to cure that default.  (Id. ¶ 48.)

On February 7, 2013, Asherman delivered a letter to Lannett threatening to file a lawsuit against Lannett, Bedrosian, and Cody Labs unless Asherman was released from his employment agreement with Cody Labs and paid full severance benefits, and Lannett agreed to buy out his interest in Cody LCI.  (Id. ¶¶ 51-52.)  On March 1, and again on March 12, Asherman threatened to dissolve Cody LCI.  (Id. ¶¶ 53, 56.)  On March 14, 2013, Asherman threatened to halt operations of Cody Labs.  (Id. ¶ 59.)  The following day, the Board of Cody Labs met to address Asherman's threats, and Asherman withdrew his threats against Cody Labs.  (Id. ¶¶ 61-62.)  On March 20, 2013, the Board of Cody Labs served Asherman with a formal reprimand.  (Id. ¶ 63.)  Asherman sent a letter in response to the reprimand in which he asserted that he had been prevented from performing his duties as CEO by Lannett and the Board of Cody Labs.  (Id. ¶ 65.)

In the Complaint, Lannett and Bedrosian assert five claims against Asherman: Breach of Contract (Count One), Breach of Fiduciary Duty (Count Two), Breach of Covenant of Good Faith and Fair Dealing (Count Three), Invasion of Privacy (Count Four), and Declaratory Judgment (Count Five).  (Id. ¶¶ 66-93.)

## II.     DISCUSSION

### A.     Motion to Dismiss Based on Improper Venue

We first consider Asherman's Motion to Dismiss insofar as it seeks dismissal for improper venue pursuant to Rule 12(b)(3).

4

1.      Legal Standard

Federal Rule of Civil Procedure 12(b)(3) provides that a motion to dismiss may be made on the basis of improper venue.  In the Third Circuit, the burden of demonstrating improper venue is placed on the defendant.  Bockman v. First Am. Mktg. Corp., 459 F. App'x 157, 160 (3d Cir. 2012) (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982)).  In considering a motion to dismiss for improper venue, the court must generally accept as true the allegations in the pleadings, and must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor.  Fellner v. Phila. Tobbogan Coasters, Inc., Civ. A. No. 05-2052, 2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005) (citations omitted).  The parties may submit affidavits in support of their positions and may stipulate as to certain facts.  Manning v. Flannery, Civ. A. No. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010).  However, even when the court considers affidavits and other evidence outside the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." Id. (citing ProModel Corp. v. Story, Civ. A. No. 07-3735, 2007 WL 412502, at *1 (E.D. Pa. Nov. 19, 2007)).

2.      Analysis

Asherman argues that his alleged wrongful conduct occurred in Wyoming — not in the Eastern District of Pennsylvania — and that venue is therefore improper here.  By contrast, Plaintiffs assert that this district is a proper venue under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim[s] occurred" here.  (Compl. ¶ 6.)

When a defendant challenges venue under § 1391(b)(2), we undertake a two-part inquiry.  First, we "'identify the nature of the claims and the acts or omissions that the plaintiff alleges

give rise to those claims.'"  Chester v. Beard, Civ. A. No. 07-4742, 2008 WL 2310946, at *7 (quoting Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005)).  "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim . . . .'"  Cottman Transmissions Sys. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

Second, we "'determine whether a substantial part of those acts or omissions . . . material to [those] claims . . . have occurred in the district in question.'"  Chester, 2008 WL 2310946, at *7 (quoting Daniel, 428 F.3d at 432). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."  Cottman, 36 F.3d at 294.  Consequently, "'[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and thus, substantial.'"  Leone v. Cataldo, 574 F. Supp. 2d at 484 (E.D. Pa. 2008) (quoting Daniel, 428 F.3d at 432); see Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005). Conversely, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough."  Cottman, 36 F.3d at 294; see also Leone, 574 F. Supp.2d at 484. Because § 1391 "'does not require a majority of the events take place here, nor that the challenged forum be the best forum for the lawsuit to be venued,'"  Fellner, 2005 WL 2660351, at *3 (quoting Park Inn Int'l, L.L.C. v. Mody Enters., Inc., 105 F. Supp. 2d 370, 376 (D.N.J. 2000)), "'[i]t is irrelevant that a more substantial part of the events took place in another district, as long as a substantial part of the events took place in [this] district as well.'"  Rodriguez v. Smith, Civ. A. No. 03-3675, 2005 WL 1484591, at *3 n.5 (E.D. Pa. June 21, 2005) (quoting Morris v. Genmar Indus., Inc., Civ. A. No. 91-5212, 1993 WL 217246, at *5 (N.D.Ill. July 18,

1993)).  At bottom, the substantiality inquiry is more qualitative than quantitative.  <u>Daniel</u>, 428 F.3d at 432.

Where, as in this case, a complaint contains multiple claims, venue must be proper for each claim.  <u>Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the United States & Canada</u>, 812 F. Supp. 509, 517 (E.D. Pa. 1992).

Turning to the first part of the inquiry, Plaintiffs assert five claims: (1) Asherman breached the Operating Agreement by demanding that Cody LCI compensate him for its conveyance of property to Forward Cody, demanding that Lannett buy out his membership interest in Cody LCI, and unilaterally attempting to dissolve Cody LCI;  (2) Asherman breached his fiduciary duties based on those same actions; (3) Asherman breached the Operating Agreement's implied covenants of good faith and fair dealing; (4) Asherman committed invasion of privacy by recording Bedrosian's communications during the August 2012 telephone conference without consent; and (5) Plaintiffs are entitled to declaratory relief.

Turning to the second part of the inquiry, we next "'determine whether a substantial part of those acts or omissions . . . material to [those] claims . . . have occurred in the district in question.'"  <u>Chester</u>, 2008 WL 2310946, at *7 (quoting <u>Daniel</u>, 428 F.3d at 432).

> (a) Breach of Contract (Count One), Breach of Fiduciary Duty (Count Two), and Breach of Covenant of Good Faith and Fair Dealing (Count Three)

With respect to Counts One, Two, and Three, Plaintiffs allege that Asherman breached the Operating Agreement, his fiduciary duty, and the covenant of good faith and fair dealing by demanding that Cody LCI compensate him for the company's conveyance of property to Forward Cody, by demanding that Lannett buy out his ownership interest in Cody LCI, and by unilaterally attempting to cause the dissolution of Cody LCI.  (Compl. ¶¶ 69-79.)  Asherman

argues that venue properly lies in Wyoming rather than in the Eastern District of Pennsylvania with respect to these claims, because Asherman made his demands of Lannett — and thereby committed the alleged breaches — while living and working in Wyoming.  (Asherman Aff. ¶ 10.)

Asherman's assertion that he performed the alleged breaches from Wyoming, however, does not establish that venue is improper in the Eastern District of Pennsylvania.  Section 1391(b) does not require this Court to determine the "best" forum, Cottman, 36 F.3d at 294 (citation omitted), or "the forum with the most substantial events," Superior Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999).  In fact, venue may be proper in more than one district.  Id.  It is necessary "only that a 'substantial part' of the events occurred here."  Goddard Systems, Inc. v. Overman, Civ. A. No. 12-5368, 2013 WL 159933, at *4 (E.D. Pa. Jan. 14, 2013).

Here, two noteworthy events and one noteworthy omission giving rise to Counts One, Two, and Three took place in the Eastern District of Pennsylvania.  First, it was in Philadelphia that Asherman proposed and discussed the Project Development and Administrative Agreement, by which Cody LCI agreed to convey a part of its property to Forward Cody.  (Schreck Decl. ¶ 8(a).)  Second, on February 26 and 27, 2013, while in Philadelphia, Asherman allegedly discussed environmental, health, and safety issues relating to Cody Labs.  (Schreck Decl. ¶ 16.)  Third, Asherman allegedly made an omission by failing to secure adequate insurance coverage for Cody Labs through Lannett's designated risk management employee, who was located in Philadelphia.  (Schreck Decl. ¶¶ 18-19.)

While it is debatable whether these two events and one omission are substantial enough to support venue in this district with respect to Counts One, Two and Three, we conclude that, on

balance, they are.   The Project Development and Administrative Agreement discussed in Philadelphia created the conflict of interest that served as the pretext for Asherman's alleged breaches.  (Compl. ¶¶ 15, 30, 69, 73, 78.)  The environmental, health and safety issues discussed in Philadelphia served as bases for Asherman's assertion that Cody LCI should secure additional insurance.  (Compl., Ex. H at 5-6.)  In addition, Cody LCI's failure to secure that insurance was, in turn, one of Asherman's alleged pretexts for attempting to dissolve the company.  (Compl. ¶¶ 44-45, 48; Ex. E; Ex. G; Ex. H.)  Finally, the failure to secure adequate insurance in Philadelphia served as an alleged pretext for Asherman's attempted dissolution of Cody LCI.  (Id. ¶¶ 44-45, 53-55; Ex. E; Ex. I.)  Thus, we find that venue is proper in this district with respect to Counts One, Two, and Three.[1]

---

[1] Asherman argues that "to justify venue in a given district, a substantial part *of the wrongful conduct* must occur there."   (Def.'s Mem at 14.)   To support this proposition, Asherman relies heavily on Pennsylvania Gear Corp. v. Fulton, Civ. A. No. 98-1538, 1999 WL 80260, *2 (E.D. Pa. Jan. 26, 1999).
      Asherman's assertion is incorrect for two reasons.   First, Fulton is factually distinguishable from the instant case.  In Fulton, the district court found that venue was improper in the Eastern District of Pennsylvania because the only alleged acts that took place here were the plaintiff's "administrative tasks" in which the defendant played no part.  Fulton, 1999 WL 80260 at *3.   By contrast, in the instant case, Asherman allegedly participated in several purportedly substantial acts or omissions in the Eastern District of Pennsylvania that relate to Counts One, Two, and Three.   For example, Asherman participated in Philadelphia-based discussions about the Project Development and Administrative Agreement.  (Schreck Decl. ¶ 8(a).)  Asherman also allegedly failed to secure adequate insurance coverage for Cody Labs through Lannett's designated risk management employee in Philadelphia.  (Id. ¶¶ 18-19.)  Accordingly, Fulton is distinguishable from the instant case.
      Second, Asherman's contention that "to justify venue in a given district, a substantial part *of the wrongful conduct* must occur there" is contradicted by the case law of this and other courts.  See Leone, 574 F. Supp. 2d at 484 ("In determining whether a substantial part of the acts giving rise to a contract claim occurred in a district, a court should consider where the contract was negotiated, executed, and performed and where the breach occurred.")  (citing cases); see also Uffner v. La Reunion Francaise, S.A, 244 F.3d 38, 42 (1st Cir. 2001) (stating that a court deciding venue does "not [look] to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim" (citation omitted)).

(b)     Invasion of Privacy (Count Four)

With respect to Count Four, Plaintiffs allege that in August 2012, Asherman recorded a telephonic meeting of the Board of Directors of Cody Labs, in violation of Bedrosian's expectation of privacy and without the notice or consent of any Board member.  (Id. ¶¶ 39-40, 43, 85-89.)  Plaintiffs further allege that Asherman participated in that meeting from Wyoming, while Bedrosian participated in the meeting from Pennsylvania.  (Id. ¶¶ 41-43, 83-84.)

Asherman contends that venue is improper in the Eastern District of Pennsylvania with respect to Count Four because he recorded the conversation, and thereby violated Bedrosian's right to privacy, from Wyoming.  (Def.'s Mem. at 15.)  He further argues that "the proper focus is on where the wrongful conduct of the defendant[] occurred, not where the harm that such conduct supposedly caused is felt."  (Id. at 12-13.)

While Asherman is correct that the locus of injury is generally insufficient to justify venue,[2] it does not follow from this principle that venue is improper in this district with respect to Count Four.  As discussed above, venue is proper wherever "a substantial part of events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, Bedrosian's speech and participation during the recorded telephone conference occurred in Pennsylvania.  (Compl. ¶¶ 85.)  Those acts of speech and participation constitute substantial — even essential — events giving rise to the claim.  That is, absent Bedrosian's communications during the telephone conference, Asherman could not have recorded Bedrosian's communications. Accordingly, "a

---

[2] See Herbert v. Christiana Care Corp., No. 04-1984, 2004 WL 2554562, at *2 (E.D. Pa. Nov. 8, 2004) ("where tortious conduct occurs in one jurisdiction, a mere effect of that conduct being felt in a second is not enough to support venue in that second jurisdiction.")  (citing cases); DaimlerChrysler Corp. v. Askinazi, No. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) ("venue is not proper in a district if injury is the only event occurring in that district.") (citing cases).

substantial part of the events giving rise" to the invasion of privacy claim occurred in this district.  Consequently, venue is appropriate in this district with respect to Count Four.

(c)      Declaratory Judgment (Count Five)

In Count Five, Plaintiffs request a declaration of the following: (1) Lannett did not breach its fiduciary duties or engage in self-dealing; (2) Lannett did not default under the Operating Agreement; (3) Lannett did not breach the Operating Agreement; (4) Lannett did not breach the Operating Agreement's covenant of good faith and fair dealing; (5) Bedrosian did not engage in self-dealing or breach his fiduciary duties; (6) Lannett did not cause Cody LCI to default under the lease agreement; (7) Lannett did not cause Cody LCI to breach the lease agreement; (8) Lannett did not breach an agreement to purchase Asherman's membership interest in Cody LCI; (9) Asherman improperly purported to dissolve Cody LCI in violation of the Operating Agreement; (10) Lannett did not cause Cody LCI to enter into the lease agreement in a less than arm's length transaction; and (11) there is no legal basis to interrupt, interfere, or halt the business of Cody Labs.  (Compl. ¶ 93.)

Although Asherman seeks dismissal of the entire Complaint pursuant to Rule 12(b)(3), he fails to develop any argument as to why venue is improper with respect to Count Five. Accordingly, Asherman has failed to meet his burden of showing that Plaintiff's chosen venue is improper with respect to Count Five.  Bockman, 459 F. App'x at 160 (3d Cir. 2012) ("the defendant . . . bear[s] the burden of showing improper venue.") (citation omitted).

Therefore, in sum, Asherman has failed to meet his burden of showing that Plaintiffs' choice of venue is improper with respect to Counts One, Two, Three, Four, and Five. Accordingly, we deny Asherman's Motion to Dismiss insofar as it seeks to dismiss the case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

B.     Transferring Venue

Second, we consider Asherman's Motion to Dismiss insofar as it seeks an order transferring this action to the District of Wyoming pursuant to 28 U.S.C. § 1404(a).  That statute provides that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

1.     Standard of Review

In ruling on a motion under § 1404(a), the court is free to consider "all relevant factors," and the Third Circuit directs district courts to a list of certain private and public interest factors. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: § 3848 (2d ed. 1986)).  The private interests include:

> (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records.

McLaughlin v. GlaxoSmithKline, L.L.C., Civ. A. No. 12-3272, 2012 WL 4932016, at *2 (E.D. Pa. Oct. 17, 2012) (citing Jumara, 55 F.3d at 879). The public interests include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

Id.  (citing Jumara, 55 F.3d at 879).

The movant bears the burden of establishing the need for transfer.  Jumara, 55 F.3d at 879.  "It is black letter law that a plaintiff's choice of a proper forum is a paramount

consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" Shutte v. Armco Steel Corp., 431 F.2d 22, 22 (3d Cir. 1970) (quoting Ungrund v. Cunningham Brothers, Inc., 300 F. Supp. 270, 272 (S.D.Ill. 1969)).  A defendant must show that the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum" and if "when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991).

        2.     Analysis

Asherman has moved to transfer the action to the District of Wyoming.  As a threshold matter, he contends that venue is proper in the District of Wyoming pursuant to 28 U.S.C. § 1391(b)(1) because he is the only defendant and he is a resident of Wyoming.  He asserts that venue is also proper in Wyoming pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims arose there.  Asherman also avers that the relevant public and private factors weigh decidedly in favor of trial in Wyoming.  Specifically, Asherman argues that Wyoming is a superior venue to this district because (1) the claims arose in Wyoming; (2) Plaintiff is financially stronger; (3) the records and important witnesses are located in Wyoming; (4) Asherman's assets are located in Wyoming; (5) Wyoming law will govern; (6) the ease and expense of trial would be less in Wyoming; and (7) Wyoming has a greater interest in the controversy.  (Id. at 19-22.)

By contrast, Plaintiffs dispute that venue would be proper in the District of Wyoming pursuant to 28 U.S.C. § 1391(b)(1), arguing that Asherman is no longer a resident of Wyoming.  Plaintiffs also argue that, even if venue is proper in Wyoming, Asherman has failed to carry his burden of demonstrating that the private and public factors weigh in favor of transfer.

(a)    <u>Venue</u>

As a threshold matter, we must first determine whether venue is proper in the transferee district, Wyoming. <u>Resource Bank v. Progressive Cas. Ins. Co.</u>, Civ. A. No. 06-1699, 2007 WL 136320, at *2 (E.D. Pa. Jan. 11, 2007) ("In deciding a motion to transfer venue, the Court must first determine whether the proposed alternative forum is a proper venue.")  Here, venue is proper in the District of Wyoming pursuant to 28 U.S.C. § 1391(b)(2) because it is a "district in which a substantial part of the events or omissions giving rise to the claim[s] occurred."  28 U.S.C. § 1391(b)(2).  The alleged events that occurred in Wyoming and that together constitute a substantial part of the events giving rise to the claims include: (1) Asherman's demand that Cody LCI compensate him for its conveyance of property to Forward Cody; (2) Asherman's demand that Lannett buy out his membership interest in Cody LCI; (3) Asherman's unilateral attempt to dissolve Cody LCI; and (4) Asherman's recording of a Cody Labs Board meeting.  (Compl. ¶¶ 30-37, 40-43, 53-59; Asherman Aff. ¶¶ 10, 13, 15-16.)  As a substantial part of the events giving rise to the claims arose in the District of Wyoming, venue is proper there.

Having concluded that venue is proper in the transferee district, we next evaluate whether consideration of the private and public factors "tips decidedly in favor of trial in the foreign forum." <u>Lacey</u>, 932 F.2d at 180.  We first evaluate the six private factors.

(b)    <u>Private Factors</u>

(1)    <u>Plaintiffs' Forum Preference</u>

The first private factor considers Plaintiffs' forum preference.  Here, Plaintiffs selected this district as their forum, and that preference is entitled to special deference.  <u>See AT&T Corp. v. PAB, Inc.</u>, 935 F. Supp 584, 593 (E.D. Pa. 1996) ("While not dispositive, Plaintiff's choice of forum is entitled to significant weight" (citation omitted)); <u>see also CoActiv Capital Partners,</u>

Inc. v. Feathers, Civ. A. No. 08-5506, 2009 WL 1911673, *5-6 (E.D. Pa. July 1, 2009). Moreover, where, as here, plaintiffs bring suit in their home forum, their choice of forum is accorded greater weight. Id. ("A plaintiff's choice of forum is entitled to even greater deference when the chosen forum is that in which the plaintiff resides." (citation omitted)). Accordingly, the first private factor weighs against transfer.

(2)   Defendant's Forum Preference

The second private factor — the defendant's forum preference — weighs in favor of transfer. Here, Asherman's preference is for the District of Wyoming. Accordingly, the second private factor weighs in favor of transfer, although Asherman's forum choice is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted).

(3)   Whether the Claim Arose Elsewhere

The third private factor — whether the claim arose elsewhere — weighs in favor of transfer. When considering whether venue was proper in this district, we determined that a substantial part of the events giving rise to the claims occurred here. Nonetheless, and although a substantial part of the events and omissions giving rise to the claims took place in this district, an even more substantial part of those events and omissions took place in Wyoming, as Asherman's alleged wrongdoing occurred in Wyoming. Specifically, it was in Wyoming that Asherman demanded to be bought out as a member of Cody LCI and to be compensated for the reduction of his interest in the company (Compl. ¶¶ 30-37; Asherman Aff. ¶ 10); that Asherman unilaterally attempted to dissolve Cody LCI (Compl. ¶¶ 53-59; Asherman Aff. ¶¶ 15-16); and

15

that Asherman recorded a Cody Labs board meeting (Compl. ¶¶ 40-43).  Accordingly, the third

private factor weighs in favor of transfer.

       (4)  The Convenience of the Parties, as Indicated by Their
            Relative Physical and Financial Condition

   The fourth private factor — the convenience of the parties, as indicated by their relative

physical and financial condition — weighs in favor of transfer.  Here, the financial resources of

Plaintiffs far surpass those of Asherman.  Lannett is a multimillion dollar corporation led by

President and CEO Bedrosian,[3] whereas Asherman is an individual whose previous employment

with Cody Labs has been terminated and who is currently unemployed.  (Asherman Aff. ¶¶ 2-3).

Given the pendency of Asherman's own lawsuit in Wyoming over the same subject matter,

maintaining this Pennsylvania action would likely require Asherman to incur substantial expense

to prosecute cases in both venues (including travel and the hiring of multiple law firms).

Accordingly, consideration of the convenience of the parties as indicated by their relative

financial condition weighs in favor of transfer.

       (5)  Convenience of the Witnesses

   The fifth private factor — witness convenience — favors transfer.  Plaintiffs identify nine

potential witnesses, eight of whom are employees of Lannett.  (Schreck Aff. ¶ 26.)  However,

witnesses who are employed by a party carry little weight in the witness convenience analysis.

See McLaughlin, 2012 WL 4932016, at *4 ("Party witnesses or witnesses who are employed by

a party . . . have little impact on the 'balance of convenience' analysis since each party is

obligated to procure the attendance of its own employees for trial").  Therefore, Plaintiffs' sole

non-employee witness, Mark Kurtzman, is the only one who carries significant weight in our

---

   [3] See Lannett 2013 Annual Report, *available a*t www.lannett.com (reporting 2013 net
sales of $151 million).

witness convenience analysis.  (Schreck Decl. ¶ 26.)  By contrast, Asherman identifies twelve non-party, Wyoming-based witnesses.  (Supp. Asherman Aff. ¶¶ 6-16.)  Thus, the overwhelming majority of the identified non-party witnesses reside in Wyoming, and the witness convenience factor weighs in favor of transfer.

(6)    <u>The Location of Books and Records</u>

The sixth private factor — the location of books and records — is neutral, neither favoring or disfavoring transfer.  Asherman identifies several potentially relevant records that are in the possession of Wyoming-based witnesses.  (Supp. Asherman Aff. ¶¶ 6-16.)  So too do Plaintiffs identify relevant records based in Pennsylvania.  (Schreck Decl. ¶ 22.)  However, consideration of the location of these records is "limited to the extent that the [books and records] cannot be produced in the alternative forum."  <u>Jumara</u>, 55 F.3d at 879 (citation omitted).  Given that the parties will be entitled to compulsory discovery of each other's documents under Rule 34 of the Federal Rules of Civil Procedure, regardless of where the case is tried, this factor does not weigh either for or against transfer.

Thus, in total, four of the six private interest factors weigh in favor of transfer while only one, Plaintiffs' choice of forum, weighs against transfer.  Considering these factors altogether, and particularly given that "the convenience of witnesses is often cited as the most important factor in a motion to transfer venue under 1404(a)," these private interests weigh strongly in favor of transfer.  <u>Blankenship v. Graco Children's Prods., Inc.</u>, Civ. A. No. 11-04153 2011 WL 4712419, *3 (E.D. Pa. Oct. 6, 2011).

        (b)     <u>Public Factors</u>

        (1)     <u>The Enforceability of the Judgment</u>

The first public factor considers the enforceability of the judgment.  As neither party argues that a judgment in either forum would be unenforceable, the Court does not give this factor any weight in its analysis.  See <u>McCraw v. GlaxoSmithline</u>, No. 12-2119, 2014 WL 211343, at *6 (E.D. Pa. Jan. 7, 2014) (giving no weight to this factor where neither party contends that judgment would be unenforceable in either forum).

        (2)     <u>Practical Considerations that Could Make Trial Easy, Expeditious, or Inexpensive</u>

The second public factor considers the practical considerations that could make trial easy, expeditious, or inexpensive.  Here, Asherman simply repeats his arguments that the location of witnesses and records favors transfer.  As our analysis has already taken into account these arguments, this factor does not carry any weight in the analysis.

        (3)     <u>The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion</u>

The third public factor considers the relative administrative difficulty in the two fora resulting from court congestion.  As neither party argues this factor, the Court does not accord the factor any weight in its analysis.

        (4)     <u>The Local Interest in Deciding Controversies at Home</u>

The fourth public factor considers the local interest in deciding controversies at home. Here, both Wyoming and Pennsylvania have significant interests in deciding this dispute.  As Asherman notes, this dispute arises out of the activities of a Wyoming resident and the operations of Wyoming companies.  Thus, Wyoming courts have a strong interest in this case. Likewise, Plaintiffs observe that they, Pennsylvania citizens, suffered damages in Pennsylvania

as a result of Asherman's wrongdoing.  Accordingly, Pennsylvania courts have a strong interest in resolving this dispute.  As both Wyoming and Pennsylvania have strong interests in resolving this claim, this factor is neutral, neither favoring nor disfavoring transfer.

(5)      Public Policies of the Fora

The fifth public factor considers the public policies of the fora.  As neither party argues this factor, the Court does not accord the factor any weight in its analysis.  See McCraw, 2014 WL 211343, at *7 (giving no weight to this factor where neither party presents an argument as to the public policies of the fora).

(6)      Familiarity of the Trial Judge with the Applicable Law

The sixth public factor considers the familiarity of the trial judge with the applicable law. Ordinarily, in a diversity action, a federal court applies the choice of law rules of the state in which it sits.  See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  If, however, a case is transferred under § 1404(a) "the transferee district court [is] obligated to apply the state law that would have been applied if there had been no change of venue" because a "change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."  Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).  This includes a state's choice of law provisions. See McCraw, 2014 WL 211343, at *7 (applying Pennsylvania choice of law principles to a case being transferred to Texas).  Accordingly, Pennsylvania choice of law will apply.

Pennsylvania uses a two-step process to resolve choice-of-law questions.  Blain v. Smithkline Beeacham Corp., 240 F.R.D. 179, 192-93 (E.D. Pa. 2007). The first step is determining whether there is a real conflict.  Id.  If there is an actual conflict, the second step is a determination of which state has the greater interest in applying its law.  Id. at 193.

Without engaging in Pennsylvania's choice of law analysis for each claim in the Complaint, it is enough to conclude that this factor will not weigh in the analysis.  See, e.g., McGraw, 2014 WL 211343, at *7 (according no weight to this element where, as here, another state's law may apply to the case).  Whether Pennsylvania or Wyoming law will apply, the district court in either state is more than capable of applying that law to the case.  This case is not one where the law of a foreign nation will apply or, as in McLaughlin, where a particular state's civil code system will govern.  See McLaughlin, 2012 WL 4932016, at *8 (holding that potential that Louisiana statutory regime could apply meant factor weighed slightly in favor of transfer).

Thus, all of the public factors are neutral and do not affect the balance of interests.  As the private factors weigh strongly towards transfer, and the public factors do not affect the balance of interests, the litigation would more conveniently proceed and the interests of justice would be better served by transfer to the District of Wyoming.  Jumara, 55 F.3d at 879.  Accordingly, Asherman has met his burden of showing the desirability of transferring venue.  Id.

III.    CONCLUSION

For the reasons set forth above, we deny Asherman's Motion insofar as it seeks to dismiss the case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), grant the Motion insofar as it seeks to transfer the case pursuant to 28 U.S.C. § 1404(a), and hold the Motion in abeyance, in all other respects, until the action is transferred to the United States District Court for the District of Wyoming.  An appropriate order follows.

BY THE COURT:


/s/ John R. Padova_____
John R. Padova, J.

20